DOCKET NUMBERS 24-1177

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

PHILLIP JERGENSON,

*Plaintiff-Appellee*

v.

INHALE INTERNATIONAL LIMITED,

*Defendant-Appellant*

**On Appeal From**
United States District Court For The Northern District Of Illinois
Eastern Division
D.C. No. 1:22-CV-02040
Honorable Judge Manish S. Shah, Presiding

**APPELLANT'S REPLY BRIEF**

Louis F. Teran
SLC Law Group
1055 E. Colorado Blvd., Suite #500
Pasadena, CA 91106
(818) 484-3217 x200

*Counsel for Defendant/Appellant*

1

# TABLE OF CONTENTS

I. THE DISTRICT COURT WAS UNREASONABLE IN RELYING ON THE PRESUMPTION AFFORDED BY THE REGISTRATION .................................. 3

II. THE DISTRICT COURT WAS UNREASONABLE IN HOLDING THAT JERGENSON WAS NOT AWARE OF HOW SMALL DAMAGES WERE UNTIL AFTER DISCOVERY ........................................................................ 9

III. CONCLUSION .............................................................................. 12

# TABLE OF AUTHORITIES

## CASES

California Packing Corp. v. Sun-Maid Raisin Growers of California
    81 F.2d 674 (9th Cir. 1936) ...................................................................................5

Consumers Petroleum Co. v. Consumer's Co of Illinois
    169 F.2d 153 (7th Cir. 1948) ..................................................................................5

Cooter & Gell v. Hartmarx Corp.
    496 U.S. 384 (1990)................................................................................................4

Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.
    841 F.Supp. 1339 (E.D.N.Y. 1994) ........................................................................6

Donnell v. Herring-Hall-Marvin Safe Company
    208 U.S. 267 (1908)................................................................................................5

Herring-Hall-Marvin Safe Co. v. Hall's Safe, Co.
    208 U.S. 554 (1908)................................................................................................5

Highmark, Inc. v. Allcare Health Management System, Inc.
    572 U.S. 559 (2014)................................................................................................4

Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.
    627 F.2d 628 (2d. Cir. 1980)...................................................................................6

## STATUTES

15 U.S.C. §1127 .............................................................................................................7

37 CFR §2.33..................................................................................................................8

# I. THE DISTRICT COURT WAS UNREASONABLE IN RELYING ON THE PRESUMPTION AFFORDED BY THE REGISTRATION

Jergenson asserts as follows:

> "The district court also appropriately relied on the presumption of validity afforded by Jergenson's registered trademark. Inhale's arguments regarding Jergenson's abandonment of the trademark in 1987 and alleged fraud in obtaining the registration were insufficient to overcome this presumption." See *Appellee's Brief,* p.12.

However, Jergenson's lack of denial that he abandoned the trademark in 1987 speaks volumes. In addition, it is important to note that Jergenson does not dispute that he did not begin re-using the trademark until after the trademark registration was issued by the USPTO. These cannot be disputed because they were both admitted to by Jergenson in deposition. Even more, these support Inhale's position that the District Court abused its discretion by relying on the presumption afforded by the trademark registration.

"A district court would abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." See *Highmark, Inc. v. Allcare Health Management System, Inc.,* 572 U.S. 559, n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990). In the present case, Jergenson's admission that he surrendered the trademark to a third party in 1987 and that he did not begin re-using the trademark until after the trademark registration was issued, are both sufficient evidence to rebut the

4

presumption of validity afforded by the trademark registration. However, despite this undisputed evidence, the District Court clearly erred by relying on the presumption of validity.

Jergenson admitted that he had sold the trademark to a third party, Mr. Lightrain. This is of utmost importance because it is well established that when a trademark is sold, the purchaser of the trademark becomes transfixed to the position of his predecessor, enjoying the latter's rights in the trademark dating back to its initial use. See *Donnell v. Herring-Hall-Marvin Safe Company,* 208 U.S. 267, 273 (1908). See also *Herring-Hall-Marvin Safe Co. v. Hall's Safe, Co.,* 208 U.S. 554, 557-58 (1908). See also *Consumers Petrolium Co. v. Consumer's Co of Illinois,* 169 F.2d 153, 156 (7th Cir. 1948). See also *California Packing Corp. v. Sun-Maid Raisin Growers of California,* 81 F.2d 674, 676 (9th Cir. 1936). However, in the present case, despite the undisputed evidence that Jergenson sold the trademark in 1987, the District Court erroneously considered Jergenson as the presumptive owner of the trademark dating back to 1976 as indicated in the trademark registration. Even more, the District Court erroneously asserted the facts as follows:

> "After the new owner was unable to operate the business and ceased of manufacturing and selling PROTO PIPE branded products, Jergenson started to manufacture and sell the PROTO PIPE branded products and proceeded with the trademark application." *[ECF No 93 at 3-4].*

5

Essentially, the District Court misconstrues the facts as being that Jergenson essentially lent, rather than sold, the trademark. The District Court erroneously presumes that Jergenson rightly took back the trademark after Mr. Lightrain "was unable to operate the business." But, in fact, Jergenson did not lend the trademark, he sold it. With his sale of the trademark, Jergenson surrendered all rights including the date of first use. Even more, Jergenson did not surrender the trademark for a few years, he abandoned the trademark for over 30 years, between 1987 and 2018. Such extensive abandonment defeats any claim of priority by Jergenson. See *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1355 (E.D.N.Y. 1994) ("Hence a party that is found to have abandoned its mark is deprived of any claim to priority in the mark before the date of abandonment and may regain rights in the mark only through subsequent use after the time of abandonment.") (citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 627 F.2d 628, 630 (2d. Cir. 1980)).

Thus, the only way to regain rights to the trademark was to use the trademark again after it had been abandoned by Mr. Lightrain. This is where the District Court misconstrued the facts and law. First, the District Court states that Jergenson started using the trademark after Mr. Lightrain "was unable to operate the business and ceased of manufacturing and selling…" However, assuming, *arguendo,* that the District Court's recitation of facts is accurate, such is not

sufficient for Jergenson to regain rights to the trademark. The legal requirement is not merely that Mr. Lightrain stop operating its business or stop using the trademark. The requirement is that Mr. Lightrain must first abandon the trademark for Jergenson to regain rights to the trademark. Abandonment requires Mr. Lightrain to stop using the trademark with intent not to resume such use. See *15 U.S.C. §1127*. Here, the District Court merely found that Mr. Lightrain stopped using the trademark but it did not find that Mr. Lightrain had an intent not to resume use as required by 15 U.S.C. §1127. After all, the evidence does not support a finding of such intent. Thus, the District Court clearly erred by relying on Mr. Lightrain's mere stoppage of use of the trademark to presume that Jergenson rightly regained rights to the trademark.

Second, the District Court misconstrued the evidence by stating that Jergenson "proceeded with the trademark application", meaning that Jergenson began re-using the trademark first and then Jergenson "proceeded with the trademark application". However, the evidence, which is not disputed by Jergenson, shows that Jergenson did not begin re-using the trademark until AFTER the trademark registration was issued. *[ECF No 89-1 at 85-88]*. In fact, Jergenson admitted in deposition that he used the "MENDO PIPE" mark instead of the "PROTO PIPE" mark while his trademark application was pending with the USPTO. *[ECF No 89-1 at 85-88]*. It was after the trademark registration was

7

issued by the USPTO that Jergenson then dissolved "Mendo Mountain Manufacturing" and began re-using the "PROTO PIPE" mark. *[ECF No 89-1 at 85-88]*. Thus, the notion that Jergenson began re-using the trademark first and then "proceeded with the trademark application" is clearly erroneous.

This is important because it shows that the District Court based its ruling on an erroneous view of the facts and law. After all, the requirements for filing a trademark application are expressly identified in 37 CFR §2.33 as follows:

> "The [trademark] application must include a **verified** statement…[which] must allege…that the applicant believes the applicant is the owner of the mark; that the mark is in use in commerce; that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce…" See *37 CFR §2.33(a) and (b)*.

Therefore, 37 CFR §2.33 requires the applicant of a trademark application to verify that the mark is used in commerce. See *37 CFR §2.33(a) and (b)*. By filing his trademark application, Jergenson was required and did verify that he was using the Trademark in commerce. But, such was false because, in fact, Jergenson testified in deposition that he did not begin re-using the trademark until after the trademark registration was issued. *[ECF No 89-1 at 85-88]*. In fact, Jergenson testified that he used the "MENDO PIPE" mark instead until after the trademark registration for the "PROTO PIPE" mark was issued. This is an undisputed admission by Jergenson that makes the verified statement he submitted as part of his trademark application fraudulent.

8

Thus, the District Court clearly misconstrued the evidence in holding that Jergenson began re-using the trademark first and then "proceeded with the trademark application".  As such, the District Court abused its discretion by unreasonably relying on the presumption afforded by the trademark registration.

## II. THE DISTRICT COURT WAS UNREASONABLE IN HOLDING THAT JERGENSON WAS NOT AWARE OF HOW SMALL DAMAGES WERE UNTIL AFTER DISCOVERY

It cannot be disputed that this case started with the District Court granting Jergenson a TRO that required Alibaba to produce Inhale's records to Jergenson. *[ECF No 16 at ¶4]*.  With such TRO in hand, Jergenson attained access to information related to the extent of the damages in this case.  Now, Jergenson disingenuously states as follows:

> "In fact, Alibaba was less forthcoming, as recited in the Declaration of James E. Judge [91-1], one of Jergenson's attorneys, in opposition to Inhale's motion for attorneys' fees. [91].  Alibaba had not in fact produced any sales records about any defendant in the matter.  The Declaration referred to Alibaba's production in response to the Subpoena served upon it, attached as Exhibit F thereto [91-7], which included the spreadsheet containing all the information Alibaba had chosen to provide to Plaintiff.  The spreadsheet contained no information about sales (of any defendant), even though that information was explicitly required by the TRO."  See *Appellee's Brief,* p.13.

To be clear, Jergenson is accusing Alibaba of failing to comply with the District Court's TRO.  In fact, however, Jergenson never raised this issue with the District Court, Jergenson never filed a motion to compel or seek a contempt order

9

against Alibaba. But it is also important to review the evidence to which Jergenson refers. Jergenson refers to the "Declaration of James E. Judge [91-1]". In said declaration, Mr. James E. Judge declares as follows:

> "8. On July 14, 2022, pursuant to a subpoena and the TRO entered in this matter, Alibaba provided certain information regarding the defendants in this matter who used its marketplace to offer and sell products." *[ECF No 91-1 at ₱8].*

Thus, there is nothing in the declaration of James E. Judge to suggest that Alibaba "was less forthcoming" or refused to comply with the District Court's TRO. Even further, the Declaration of James E. Judge declares that Exhibit F includes copies of emails with Alibaba on this matter. *[ECF No 91-1 at ₱8].* Said emails evidence that Alibaba fully complied with the District Court's TRO. Said emails show that Alibaba expressly informed Jergenson as follows:

> "…attached please find the information you requested." *[ECF No 91-7 at p.2].*

Therefore, Jergenson fails to present any evidence whatsoever that Alibaba "was less forthcoming" or failed to comply with every aspect of the TRO. After all, Jergenson never brought a motion to compel or sought a contempt order against Alibaba. Even more, there is no evidence that Jergenson ever informed Alibaba that its production of records was deficient.

In fact, the Declaration of James E. Judge acknowledges that Alibaba produced an "Excel spreadsheet". *[ECF No 91-1 at ₱8].* Then Exhibit F to said

10

declaration includes a copy of said spreadsheet which expressly indicates that Inhale had an "account balance" of "0 USD". *[ECF No 91-7 at p.4].* Therefore, Alibaba expressly and unambiguously provided records to Jergenson pursuant to the TRO showing that Inhale's account with Alibaba had $0.00. Essentially, Inhale's account was completely empty without any money from any sales.

Nevertheless, the Declaration of James E. Judge expressly declares, "Alibaba's production did not contain information regarding sales records." *[ECF No 91-1 at ¶8].* Jergenson now complains that the lack of sales records evidences that Alibaba "was less forthcoming". But the more logical explanation is that Alibaba did not have any sales records to produce. After all, Alibaba expressly indicated in its email that it produced the information requested, the spreadsheet shows that Inhale had zero balance in its account, and Jergenson never informed the District Court that Alibaba was not complying with the TRO. Thus, the preponderance of the evidence shows that Alibaba did not have any sales records to produce because nothing had been sold through Inhale's listing on Alibaba.

Thus, when the District Court held that there was "no evidence that Jergenson was aware that his damages would be so low", the District Court made a clearly erroneous assessment of the evidence by neglecting altogether the TRO it issued at the start of the case. Such is an abuse of discretion.

### III. **CONCLUSION**

Based on the foregoing, Defendant/Appellant Inhale International Limited respectfully requests this Court to reverse the District Court's Final Judgment and remand this case to the District Court for further proceedings limited to the award of attorney's fees.

DATED: June 20, 2024

Respectfully submitted,

_____
Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Telephone: (818) 484-3217 x200
Facsimile: (866) 665-8877
Email: Lteran@SLCLG.com

*Counsel for Appellant-Defendant*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Appellant-Defendant Inhale International Limited, furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 1,999 words.

DATED: June 20, 2024

Respectfully submitted,

_____
Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Telephone: (818) 484-3217 x200
Facsimile: (866) 665-8877
Email: Lteran@SLCLG.com

*Counsel for Appellant-Defendant*

# PROOF OF SERVICE

The undersigned, counsel for the Appellant-Defendant Inhale International Limited, hereby certifies that on June 20, 2024, two copies of the Brief and Required Short Appendix of Appellant and one copy of the Separate Appendix as well as a digital version containing the brief, were delivered by email and USPS to counsel for the Appellee-Plaintiff Phillip Jergenson.

DATED: June 20, 2024

                                              Respectfully submitted,

                                              Louis F. Teran
                                              SLC LAW GROUP
                                              1055 E. Colorado Blvd., Suite 500
                                              Pasadena, CA 91106
                                              Telephone: (818) 484-3217 x200
                                              Facsimile: (866) 665-8877
                                              Email: Lteran@SLCLG.com

                                              *Counsel for Appellant-Defendant*